1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CATHY J. PFEIL,

                    Plaintiff,

        v.

MICHAEL J. ASTRUE[1], Commissioner of
Social Security,

                    Defendant.

CASE NO.    C06-5546FDB-KLS

REPORT AND
RECOMMENDATION

Noted for May 11, 2007

        Plaintiff, Cathy J. Pfeil, has brought this matter for judicial review of the denial of her application for

disability insurance benefits.  This matter has been referred to the undersigned Magistrate Judge pursuant to

28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by Mathews,

Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976).  After reviewing the parties' briefs and the remaining

record, the undersigned submits the following Report and Recommendation for the Honorable Franklin D.

Burgess' review.

FACTUAL AND PROCEDURAL HISTORY

        Plaintiff currently is fifty-three years old.[2] Tr. 24.  She has a high school education and past work

---

        [1]Pursuant to Federal Rule of Civil Procedure 25(d)(1), Michael J. Astrue, who recently became acting Commissioner
of Social Security, hereby automatically is substituted for Joanne B. Barnhart.

        [2]Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access
to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

experience as an office assistant, intuitive and intuitive arts teacher. Tr. 19, 114, 119.

On January 27, 2003, plaintiff filed an application for disability insurance benefits, alleging disability as of March 1, 2001, due to arthritis, diverticulitis, depression, fibromyalgia, and irritable bowel. Tr. 19, 64, 113. Her application was denied initially and on reconsideration. Tr. 24-26, 33. A hearing was held before an administrative law judge ("ALJ") on June 15, 2005, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. Tr. 700-738.

On March 7, 2006, the ALJ issued a decision, determining plaintiff to be not disabled, finding specifically in relevant part:

> (1) at step one of the disability evaluation process,[3] plaintiff engaged in substantial gainful activity after her alleged onset date of disability and through March 31, 2001, her date last insured – specifically during the period from January through May 2001;
>
> (2) in the alternative, at step two, plaintiff's diverticulitis, back pain, and shoulder pain were not "severe", and plaintiff did not have a "severe" impairment, prior to March 31, 2001; and
>
> (3) in the alternative, at step four, plaintiff had the residual functional capacity to perform her past relevant work as an intuitive and intuitive arts instructor for the period up to and through March 31, 2001.

Tr. 21-23. Plaintiff's request for review was denied by the Appeals Council on September 6, 2006, making the ALJ's decision the Commissioner's final decision. Tr. 7; 20 C.F.R. § 404.981.

On September 21, 2006, plaintiff filed a complaint in this Court seeking review of the ALJ's decision. (Dkt. #1). Specifically, plaintiff argues that decision should be reversed and remanded for further administrative proceedings before a different ALJ for the following reasons:

> (a) the ALJ erred in finding plaintiff performed substantial gainful activity during the period from January through May 2001;
>
> (b) the ALJ erred in finding plaintiff had no severe impairment;
>
> (c) the ALJ erred in assessing plaintiff's credibility; and
>
> (d) the ALJ was prejudiced against plaintiff.

For the reasons set forth below, the undersigned does not agree that the ALJ erred in determining plaintiff to be not disabled, and thus recommends that the ALJ's decision be affirmed. While plaintiff requests oral

---

[3]The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520. If the claimant is found disabled or not disabled at any particular step, the disability determination is made at that step, and the sequential evaluation process ends. Id.

1   argument in this matter, the undersigned finds such argument to be unnecessary here.

2   <center>DISCUSSION</center>

3       This Court must uphold the Commissioner's determination that plaintiff is not disabled if the

4   Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to

5   support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is

6   such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson

7   v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than

8   a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir.

9   1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than

10   one rational interpretation, the Court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d

11   577, 579 (9th Cir. 1984).

12   I.    Plaintiff's Date Last Insured

13       To be entitled to disability insurance benefits, plaintiff "must establish that her disability existed on

14   or before" the date her insured status expired. Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998); see also

15   Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1460 (9th Cir. 1995) (social security

16   statutory scheme requires disability to be continuously disabling from time of onset during insured status to

17   time of application for benefits, if individual applies for benefits for current disability after expiration of

18   insured status). Plaintiff's date last insured was March 31, 2001. Tr. 18, 24. Therefore, to be entitled to

19   disability insurance benefits, plaintiff must establish she was disabled prior to or as of that date. Tidwell, 161

20   F.3d at 601. As explained below, she has failed to do so.

21   II.    The ALJ's Step One Analysis

22       At step one of the disability evaluation process, the ALJ considers the claimant's work activity to

23   determine whether he or she is doing substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At this

24   step, a claimant will be found not disabled, and thus not entitled to disability insurance benefits, for any

25   period of time during which he or she has engaged in "substantial gainful activity." Tackett v. Apfel, 180

26   F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. § 404.1520(a)(4)(i), (b). In this case, the ALJ found as follows

27   regarding plaintiff's work activity:

28           After the date of alleged onset of disability, the claimant performed work activity as an
        "intuitive" and an "intuitive arts instructor." She later clarified this by indicating that

"intuitive" was the same as the more common term, "psychic." Her gross receipts for 2001 were as follows: $3,130 for January, $5,765.11 for February, $2,305 for March, $10,858 for April, and $14,999.30 for May. During the period from January through May 2001, her gross receipts averaged $7,411.48 per month with April and May the highest grossing months. The remainder of the year from June 2001 through December 2001, she earned $20,449.50, an average of $2,921.36 per month. (Exhibit 17E, pp. 7 and 8).

The claimant indicated on her tax return that she had business expenses of $49,920 for 2001, resulting in a net business income of $1,218 for the year. The business expenses included $9,265 for "Workshops & Conferences,["] $7,939 for "Travel, meals and entertainment," $6,936 for "Class expenses," $6,802 for "Advertising," $6,459 for "Supplies," $5,815 for "Rent or lease . . . Other business property," $2,218 for "Car and truck expenses," plus some lesser expenses. (Exhibit 7D). Most of these expenses are for activities that require the claimant to expend work related time and effort in addition to the time and effort for activities for which she is reimbursed.

The claimant contends that her business activities immediately prior to and including her date last insured should not be considered substantial gainful activity because the annual net income was so low. I disagree. The claimant's gross receipts for January through May 2001 were $7,411.48 per month with April 2001 and May 2001 being the highest grossing months for the year. The claimant's expenses averaged $4,160 per month for a twelve month period. The average profit per month for January through May 2001 would be $3,351.48 per month. If, on the other hand, her expenses were proportional to her gross income on a monthly basis, then the total amount of time, efforts and activities for the period would be that much greater and would be the self-employed equivalent of substantial gainful activity considering the standards for self employment set forth in 20 CFR 404.1574. The best estimate of how income and expenditures were apportioned in 2001 is that the claimant had fewer expenses during the months when her gross income was the highest. It is reasonable that the claimant would spend less time on such items as workshops, classes, travel and advertising when she had more hours in the reimbursable activity of acting as a psychic on an hourly basis. In addition, it is reasonable that the expenses for booths and fairs would be greater in the summer months. The result would be a very high net income for the months of January through May 2001. Any method of apportioning gross income and expenses for January through May 2001 results in a finding of either a great deal of self-employment work related activity or high net income. Therefore, the claimant's work of January through May 2001 was significant gainful activity.

I find that the claimant had past relevant work as an "intuitive" and an "intuitive arts teacher" in 1999 (Exhibits 3D, p. 2 and 5E, p. 8). Her gross receipts for 1999 were $59,674 equaling $4,973 per month. Her business expenses were $31,728. (Exhibit 5D, p. 3).

As the claimant performed substantial gainful activity throughout 2001 and beyond the date she was last insured for Disability Insurance Benefits, she is not entitled to benefits on this record from her alleged onset date of March 1, 2001 though [sic] the date she was last insured on March 31, 2001.

Tr. 19-20. Plaintiff argues the ALJ erred in determining that she had engaged in substantial gainful activity through her date last insured. The undersigned agrees.

The general rules for evaluating work activity for claimants who are self-employed are contained in

20 C.F.R. § 404.1575[4], which reads in relevant part:

> We will consider your activities and their value to your business to decide whether you
> have engaged in substantial gainful activity if you are self-employed.  We will not
> consider your income alone because the amount of income you actually receive may
> depend on a number of different factors, such as capital investment and profit-sharing
> agreements.  We will generally consider work that you were forced to stop or reduce to
> below substantial gainful activity after 6 months or less because of your impairment as
> an unsuccessful work attempt. . . . We will evaluate your work activity based on the
> value of your services to the business regardless of whether you receive an immediate
> income for your services.  We determine whether you have engaged in substantial
> gainful activity by applying three tests.  If you have not engaged in substantial gainful
> activity under test one, then we will consider tests two and three.  The tests are as
> follows:

> (i) Test one [sic]: You have engaged in substantial gainful activity if you render services
> that are significant to the operation of the business and receive a substantial income from
> the business.  Paragraphs (b) and (c) of this section explain what we mean by significant
> services and substantial income for purposes of this test.

> (ii) Test Two: You have engaged in substantial gainful activity if your work activity, in
> terms of factors such as hours, skills, energy output, efficiency, duties, and
> responsibilities, is comparable to that of unimpaired individuals in your community who
> are in the same or similar businesses as their means of livelihood.

> (iii) Test Three: You have engaged in substantial gainful activity if your work activity,
> although not comparable to that of unimpaired individuals, is clearly worth the amount
> shown in § 404.1574(b)(2) when considered in terms of its value to the business, or
> when compared to the salary that an owner would pay to an employee to do the work
> you are doing.

20 C.F.R. § 404.1575(a)(2).  Under 20 C.F.R. § 404.1575(b)(1), "any services" rendered by a claimant who

operates a business entirely by himself or herself are deemed "significant to the business."  In turn, the term

"substantial income" is defined in relevant part as follows:

> (1) Determining countable income.  We deduct your normal business expenses from your
> gross income to determine net income.  Once we determine your net income, we deduct
> the reasonable value of any significant amount of unpaid help furnished by your spouse,
> children, or others.  Miscellaneous duties that ordinarily would not have commercial value
> would not be considered significant.  We deduct impairment-related work expenses that
> have not already been deducted in determining your net income. . . . We deduct
> unincurred business expenses paid for you by another individual or agency. . . . That part
> of your income remaining after we have made all applicable deductions represents the
> actual value of work performed. The resulting amount is the amount we use to determine
> if you have done substantial gainful activity.  For purposes of this section, we refer to this
> amount as your countable income. We will generally average your countable income for
> comparison with the earnings guidelines in § 404.1574(b)(2). . . .

> (2) When countable income is considered substantial. We will consider your countable

---

[4]Both the ALJ and defendant rely on 20 C.F.R. § 404.1574 to find and argue that plaintiff engaged in substantial gainful
activity.  However, except as noted below, 20 C.F.R. § 404.1574 clearly is limited to claimants who have engaged in work activity
as "employees."

income to be substantial if--

(i) It averages more than the amounts described in § 404.1574(b)(2); or

(ii) It averages less than the amounts described in § 404.1574(b)(2) but it is either comparable to what it was before you became seriously impaired if we had not considered your earnings or is comparable to that of unimpaired self-employed persons in your community who are in the same or a similar business as their means of livelihood.

20 C.F.R. § 404.1575(c).

As plaintiff admits, she meets the first part of Test One above, in that she operates her intuitive and intuitive arts teaching business by herself.  The ALJ's detailed discussion of plaintiff's work activity set forth above shows the ALJ did in fact consider her net income – albeit perhaps not in the manner desired by plaintiff – and not just her gross income.  It is not clear, however, that the ALJ's calculation of her net income was entirely in line with the formula for doing so laid out in 20 C.F.R. § 404.1575(c)(1).  Indeed, the ALJ made no mention of 20 C.F.R. § 404.1575 in his decision.  Further, there is no indication that the ALJ compared plaintiff's countable income with the amounts described in 20 C.F.R. § 404.1574(b)(2), also as he was required to do.  Thus, it is not at all clear the ALJ used Test One to determine whether plaintiff had substantial income from her business, or, if he did, that he did so properly.

It also is not clear that plaintiff would meet the requirements of Test Two and Test Three described above.  For example, the ALJ made no finding under Test Two that her work activity was comparable to that of unimpaired individuals in her community who were in the same or similar businesses as their means of livelihood.  The undersigned though rejects plaintiff's claim that her work was not comparable because of the frequency of her cancelled appointments, her average of 27 hours worked per month for the period of March through December 2001, her need for assistance in traveling and teaching her classes, her lack of great skill or efficiency as a business person, and the poor business choices she made.  She has presented no evidence, other than her own assertions, that these factors, if true, resulted in work activity that was not comparable to that performed by others in the same or similar business.

Likewise, the ALJ failed to make the comparison required by Test Three, and the record does not necessarily indicate plaintiff's work activity was clearly worth the amount shown in § 404.1574(b)(2) when considered in terms of its value to the business, or when compared to the salary an owner would pay to an employee to do the work she did.  As such, the ALJ improperly found plaintiff not disabled based on his determination that she had engaged in substantial gainful activity prior to and through her date last insured.

1   Nevertheless, the undersigned finds these errors to be harmless. See Batson v. Commissioner of the Social

2   Security Administration, 359 F.3d 1190, 1197 (9th Cir. 2004) (applying harmless error standard); see also

3   Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1990).  An error is harmless if it is "inconsequential" to the

4   ALJ's "ultimate nondisability determination." Stout v. Commissioner, Social Security Admin., 454 F.3d

5   1050, 1055 (9th Cir. 2006).  Harmless error applies here because, as explained below, the ALJ did properly

6   find plaintiff had no severe impairment prior to her date last insured, and thus also properly found her not

7   entitled to disability insurance benefits on that basis.

8   III.    The ALJ Properly Found None of Plaintiff's Impairments to Be Severe

9          At step two of the sequential disability evaluation process, the ALJ must determine if an impairment

10  is "severe."  20 C.F.R. § 404.1520.  An impairment is "not severe" if it does not "significantly limit" a

11  claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(iii), (c); Social

12  Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1.  Basic work activities are those "abilities and

13  aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b); SSR 85- 28, 1985 WL 56856 *3.

14         An impairment is not severe only if the evidence establishes a slight abnormality that has "no more

15  than a minimal effect on an individual[']s ability to work."  See SSR 85-28, 1985 WL 56856 *3; Smolen v.

16  Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988).  Plaintiff

17  has the burden of proving that her "impairments or their symptoms affect her ability to perform basic work

18  activities." Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599,

19  601 (9th Cir. 1998).  The step two inquiry described above, however, is a *de minimis* screening device used

20  to dispose of groundless claims.  Smolen, 80 F.3d at 1290.

21         The ALJ found plaintiff did not have a severe impairment prior to her date last insured due to the

22  following reasons:

23         The medical evidence shows that the claimant's abdominal complaints prior to March
           31, 2001 were sporadic diverticulitis symptoms (Exhibit 3F).  They became more severe
24         in June 2001 (Exhibit 10F, p. 3).  Similarly, her complaints of back and shoulder pain, as
           well as mental problems are first mentioned in June 2001 (Exhibits 6, p. 7 and 7F, p. 6).
25         Thus, based on the medical record, the claimant's impairments are nonsevere prior to
           March 31, 2001, the date she last met the insured status requirements.
26
27  Tr. 21.  Plaintiff argues the ALJ erred when he found she did not have a severe impairment.  She asserts the

    medical evidence in the record showed her shoulder problems, diverticulosis and abdominal pain, anxiety,
28
    fibromyalgia, and knee and lumbar spine problems to all be severe.  The undersigned disagrees.

1   While it may be true, as plaintiff asserts, that, contrary to the ALJ's findings, the medical evidence in

2   the record shows plaintiff began having abdominal, back and shoulder problems prior to her date last

3   insured, that is not enough to establish severity for step two analysis purposes.  Rather, plaintiff also must

4   show that those problems, and the other impairments she alleges she suffers from, had more than a minimal

5   effect on her ability to do basic work activities.  In other words, the mere diagnosis of a condition does not

6   alone establish the existence of a severe impairment, let alone disability.  See Matthews v. Shalala, 10 F.3d

7   678, 680 (9th Cir. 1993) (mere existence of impairment is insufficient proof of disability).  Plaintiff points to

8   no opinion source, or other equally valid, objective medical evidence in the record that any of the above

9   conditions affected her ability to work, nor does the undersigned find any.

10   Plaintiff also appears to rely on her own testimony and prior reports to her treatment providers, and

11   statements from family members, that her various medical conditions caused her significant physical and

12   mental limitations.  At step two of the disability evaluation process, however, although the ALJ must take

13   into account a claimant's pain and other symptoms (see 20 C.F.R. § 404.1529), the severity determination is

14   made solely on the basis of the objective medical evidence in the record:

15   A determination that an impairment(s) is not severe requires a careful evaluation of the
medical findings which describe the impairment(s) and an informed judgment about its

16   (their) limiting effects on the individual's physical and mental ability(ies) to perform
basic work activities; thus, an assessment of function is inherent in the medical

17   evaluation process itself.  At the second step of sequential evaluation, then, medical
evidence alone is evaluated in order to assess the effects of the impairment(s) on ability

18   to do basic work activities.  If this assessment shows the individual to have the physical
and mental ability(ies) necessary to perform such activities, no evaluation of past work

19   (or of age, education, work experience) is needed.  Rather, it is reasonable to conclude,
based on the minimal impact of the impairment(s), that the individual is capable of

20   engaging in SGA.

21   SSR 85-28, 1985 WL 56856 *4 (emphasis added).  As explained above, other than the fact that plaintiff

22   may have been diagnosed with or noted to have the various medical conditions of which she complains,

23   none of the medical evidence in the record showed these conditions had more than a minimal effect on her

24   ability to work prior to or as of the expiration of her insured status.

25   IV.   The ALJ's Assessment of Plaintiff's Credibility

26   Questions of credibility are solely within the control of the ALJ.  Sample v. Schweiker, 694 F.2d

27   639, 642 (9th Cir. 1982).  The Court should not "second-guess" this credibility determination.  Allen, 749

28   F.2d at 580.  In addition, the Court may not reverse a credibility determination where that determination is

based on contradictory or ambiguous evidence.  Id. at 579.  That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence.  Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief."  Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted).  The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints."  Id.; Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing."  Lester, 81 F.2d at 834.  The evidence as a whole must support a finding of malingering.  O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid."  Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).  The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms.  Id.

Here, the ALJ discounted plaintiff's credibility for the following reasons:

> The claimant's subjective complaints . . . are considered credible only to the extent that they are supported by the evidence in the record, as summarized herein.  The above analysis is not based on the lack of credibility of the claimant.  However, there are some factors that reduce her credibility.  First and foremost, it is inherent in the profession of a psychic that the psychic present herself as having a supernatural means of discerning the future.  Many may go to a psychic purely for the entertainment, but some may truly believe.  That belief is encouraged and fostered by the psychic.  The claimant charged $100 per hour for her services.  I do not believe that the claimant has such powers or believes that she does.  Therefore, much of the work is pretending and persuading others that such powers exist.  The claimant was being less than candid when she listed her past jobs as an "intuitive" and an "intuitive arts instructor."  This appears to be an effort to hide what she really did.  The claimant also initially exaggerated her credentials when I asked her about her qualifications to teach.  In general, I find the claimant credible only when her testimony can be verified.

Tr. 21.  Plaintiff argues these are not clear and convincing reasons for discounting her credibility.  The undersigned agrees.

First, the statement offered by the ALJ that plaintiff's subjective complaints were considered to be credible only to the extent they were supported by the evidence in the record, without specific reference to

those portions of the record that support this statement, is wholly insufficient.  In addition, while the ALJ

may not believe that being a psychic is a legitimate profession, that belief alone does not necessarily mean

there are no legitimate psychics, although the undersigned makes no specific finding in that regard here, or

that plaintiff herself does not believe it.  The ALJ, furthermore, points to no specific evidence in the record

that plaintiff exaggerated her credentials, or was being less than candid or intentionally deceiving the ALJ,

when she testified regarding her work as an intuitive and intuitive arts teacher.

Nevertheless, as plaintiff admits, the ALJ is not required to make a finding regarding a claimant's

credibility when the ALJ properly finds the claimant has no severe impairment at step two of the sequential

disability evaluation process.  Indeed, as discussed above, the step two finding is made on the basis of the

objective medical evidence in the record alone.  Also, as discussed above, the ALJ here did properly find

plaintiff had no severe impairment at step two.  Again, therefore, while the ALJ's credibility determination

contained the errors noted above, those errors were harmless, as they were "inconsequential" to the ALJ's

"ultimate nondisability determination." Stout, 454 F.3d at 1055.

V.    Plaintiff Has Failed to Demonstrate the ALJ Was Prejudiced Against Her

The requirements of due process demand "impartiality on the part of those who function in judicial

or quasi-judicial capacities." Schweiker v. McClure, 456 U.S. 188, 195 (1982).  Hearing officers who

decide social security claims are presumed to be unbiased. Id.  This presumption, however, "can be rebutted

by a showing of conflict of interest or some other specific reason for disqualification." Id.  The burden of

establishing such a disqualifying interest "rests on the party making the assertion." Id. at 196.  That party

must show "the ALJ's behavior, in the context of the whole case, was 'so extreme as to display clear

inability to render fair judgment.'" Rollins v. Massanari, 246 F.3d 853, 858 (9th Cir. 2001) (citing Liteky v.

United States, 510 U.S. 540, 555-56 (1994)).  In addition, "actual bias," rather than the "mere appearance

of impropriety," must be shown in order to disqualify an ALJ. Bunnell v. Barnhart, 336 F.3d 1112, 1115 (9th

Cir. 2003).

Plaintiff argues the ALJ's belief that she does not have psychic powers, and that everything she says

is a lie because she professes such a belief is tantamount to religious discrimination, shows the ALJ was

prejudiced against her.  The undersigned disagrees.  First, plaintiff points to no legal authority to support

her assertion that disbelief in another's spiritual belief system, and reliance on that disbelief as a basis for

1    discounting credibility, constitutes religious discrimination.  Second, the ALJ did not state that he found

2    everything she said to be untrue.  Further, while the ALJ's reliance on his disbelief of plaintiff's intuitive or

3    psychic powers to discount her credibility clearly was erroneous as explained above, it is not at all clear that

4    this amounted to a conflict of interest or was so extreme as to constitute actual bias.  Accordingly, the

5    undersigned declines to find the ALJ acted with prejudice toward plaintiff.

6                                              <u>CONCLUSION</u>

7            Based on the foregoing discussion, the Court should find the ALJ properly concluded plaintiff was

8    not disabled, and should affirm the ALJ's decision.

9            Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b),

10   the parties shall have ten (10) days from service of this Report and Recommendation to file written

11   objections thereto.  <u>See also</u> Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those

12   objections for purposes of appeal.  <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).  Accommodating the time limit

13   imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **May 11, 2007**, as

14   noted in the caption.

15           DATED this 18th day of April, 2007.

16

17

18                                              Karen L. Strombom
                                                United States Magistrate Judge
19

20

21

22

23

24

25

26

27

28